**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00130-WJM-NYW

FOX FACTORY, INC.,

    Plaintiff,

v.

SRAM, LLC, a Delaware limited liability company, and
SANDLEFORD, LIMITED TAIWAN BRANCH (IRELAND), a Taiwanese limited liability company

    Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

    This matter comes before this court for recommendation on Plaintiff FOX Factory, Inc.'s Motion for Order Permitting Fox Factory to Amend Its Final Infringement Contentions and/or Assert Infringement at Trial by SRAM's Brain Product ("Motion to Amend Final Infringement Contentions"), *see* [#187, filed December 7, 2018], which was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b), Fed. R. Civ. P. 72, and the Memorandum dated December 12, 2018 [#192]. The court has discussed the issue with the Parties [#183]; reviewed the Parties' briefing, including Defendants' Response [#200] and Plaintiff's Reply [#207]; and has determined that further oral argument would not materially assist in resolving this instant Motion. Having been advised of the premises, this court respectfully **RECOMMENDS** that Plaintiff's Motions to Amend Final Infringement Contentions be **DENIED**.

**BACKGROUND**

On July 1, 2016, Plaintiff FOX Factory, Inc. ("Plaintiff" or "FOX Factory") initiated two separate actions in the United States District Court for the Northern District of California. The Parties thereafter stipulated to consolidation. *See* [#1, #107]. In the operative First Amended Complaint for this action, FOX Factory alleges Defendants infringe U.S. Patent No. 6,135,434 ("the '434 patent" or "the air shock patent"). [#79]. Pursuant to the NDCA Patent Local Rules, FOX Factory served its Infringement Contentions and subsequently amended them in both cases with the court's approval. *See* NDCA Patent L.R. 3-1, 3-4. Specifically, Plaintiff contends that Defendants willfully infringe Claims 2 and 9 of the '434 patent with the Monarch R, Monarch RL, Monarch RT, Monarch RT3, Monarch XX, Monarch Plus R, Monarch Plus RC3, Vivid Air RC2, Deluxe RT3, Deluxe RT, Deluxe RL, Deluxe RL Remote, Deluxe R, Super Deluxe RC3, Super Deluxe R, Super Deluxe RT, Super Deluxe RCT, Super Deluxe RC World Cup, and Debon Air Upgrade Kit. [#88-3 at 2].

The court in the Northern District of California issued its claim construction order on October 30, 2017. *See* [#105]. On January 3, 2018, FOX Factory sought to further amend its Infringement Contentions. [#121-4]. FOX Factory sought to supplement its Second Amended Infringement Contentions with arguments arising from the court's claim construction of the terms "bypass channel" and "whereby the second gas chamber portion acts as an air negative spring to automatically balance the force on the damping unit . . . so the shock absorber is in an equilibrium condition," in response to non-infringement arguments identified by Defendants ("First Motion to Amend").[1] [#121-4 at 8]. As justification for the proposed amendments to the '434 patent, FOX

---

[1] While Plaintiff had previously amended its infringement contentions while proceeding in the United States District Court for the Northern District of California, the court characterizes this motion as the "First Motion to Amend" because it was the first motion to amend adjudicated by this court.

2

Factory argued that it was diligent in soliciting any new non-infringement arguments by Defendants, that Defendants did not articulate those non-infringement arguments until six weeks after the court's claim construction order, and that it was diligent in seeking amendment after receiving those new non-infringement arguments. [#121 at 5-6]. Five days later, the Northern District of California transferred both actions to this District. [#122].

This court granted the First Motion to Amend on March 15, 2018, and construed Plaintiff's Third Amended Infringement Contentions as its Final Infringement Contentions under this District's Local Patent Rules. [#147]. This court further instructed the Parties to comply with this District's Local Patent Rules moving forward. [*Id.*]. Defendants then filed Final Invalidity Contentions on April 5, 2018. [#156]. The Parties continued discovery, raising a number of discovery disputes with the court. *See, e.g.*, [#159; #163; #164; #165]. On July 6, 2018, the Parties requested a Status Conference with the court [#167], which was held on July 11, 2018. [#171]. During the Status Conference, the Parties indicated that they were contemplating a global resolution and sought an extension of time to complete discovery. [#170; #171]. The court granted an extension of time, reset pretrial deadlines, and reset the Final Pretrial Conference for May 3, 2019. [#173]. The Parties were unable to resolve their disputes, and appeared before the court again on September 7, 2019, and the deadlines for expert discovery were subsequently extended upon joint motion. [#174; #177].

The Parties continued to have discovery issues that required court intervention. *E.g.*, [#184]. One such issue raised during the November 14, 2018 discovery dispute conference was whether FOX Factory would be permitted to present evidence of infringement by Defendants' custom products. [*Id.*]. Plaintiff argued that it should be permitted to present evidence that the custom "BRAIN" product infringed the '434 Patent because SRAM had delayed in providing it

3

information regarding the BRAIN product. Defendants disagreed, arguing that Plaintiff was well aware of the BRAIN product before the deadline for amendment, and they had no obligation to craft Plaintiff's infringement argument for it. Because the record contained insufficient evidence as to what was disclosed in discovery and more importantly, when it was disclosed, the court ordered formal briefing, and this instant Motion to Amend followed.

## LEGAL STANDARDS

### I. Standard for Amendment to Final Infringement Contentions

While the court has previously discussed the "good cause" standard applicable to the amendment of infringement and invalidity contentions between their Initial and Final versions under this District's Local Patent Rule 16(a)(3), (b)(3), *see, e.g.*, [#147; Civil Action No. 18-cv-0127-WJM-NYW [ECF No. 169]], the Local Patent Rules do not expressly address amendments to Final Infringement Contentions. At least one court in this District has applied Local Patent Rule 16(b)(3)'s standard of good cause. *Brandt v. Von Honnecke*, No. 1:15-CV-02785-RM-NYW, 2018 WL 4385284, at *1 (D. Colo. Sept. 14, 2018). Another has applied Rule 26(e) of the Federal Rules of Civil Procedure, which requires a party to supplement or correct its disclosure or response "in a timely manner" if the party learns that in some material respect the disclosure or response is incomplete or incorrect. *See, e.g.*, *Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, No. 12-CV-0189-WJM-KMT, 2014 WL 485876, at *6 (D. Colo. Feb. 6, 2014), *aff'd*, 595 F. App'x 983 (Fed. Cir. 2015) (affirming, *inter alia*, the district court's exclusion of Teashot's doctrine of equivalents theory as a discovery sanction).

Regardless of the articulation as "good cause" or "in a timely manner," it is clear to this court that it should first consider FOX Factory's diligence in seeking amendment to its Final Infringement Contentions. Indeed, this concept is consistent with "good cause" as construed by

4

the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit"). When interpreting "good cause" in the context of amendment to pleadings, the Tenth Circuit has explained that the movant is required to show that "scheduling deadlines cannot be met despite the movant's diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). In that way, "good cause" does not focus on the bad faith of the movant or prejudice to the opposing party in the first instance. *See Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). It is also consistent with our sister courts within the Tenth Circuit that expressly incorporate "good cause," and in some cases, "timely showing of good cause," into their respective Patent Local Rules as the standard for amendment to Final Infringement Contentions, *see, e.g.*, *Corel Software, LLC v. Microsoft Corp.*, No. 2015-CV-00528-JNP-PMW, 2018 WL 5792323, at *2 (D. Utah Nov. 5, 2018); *Digital Ally, Inc. v. Taser Int'l, Inc.*, No. 16-CV-2032-CM-TJJ, 2018 WL 1138283, at *2 (D. Kan. Mar. 2, 2018), as well as courts outside of this Circuit that require good cause for any amendment to infringement contentions, including the United States District Court for the Northern District of California, where this action originated. *See, e.g.*, [#147 at 5 (citing NDCA Patent L.R. 3-6)].

**II.  Discovery Sanctions for Failure to Disclose**

At the heart of Plaintiff's argument is its assertion that Defendants failed to satisfy its discovery obligations as set forth in the Federal Rules of Civil Procedure. It appears undisputed that Defendants failed to identify the BRAIN product expressly in their response to Interrogatory No. 9. *Compare* [#187 at 6-7] *with* [#200]. Instead, Defendants contend that information regarding the BRAIN shock was publicly known as of July 2017; within FOX Factory's own competitive analysis from September 2017; or through Defendants' document production as of

May 2018. [*Id.* at 2-3]. Therefore, Defendants argue that they were not required to supplement their response to Interrogatory No. 9.

Rule 26(e) of the Federal Rules of Civil Procedure imposes a self-executing duty on a party who has responded to an interrogatory to supplement or correct its response in a timely manner if the party learns that in some material respect the response is incomplete, and if the additional information has not otherwise been made known to the other parties during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A); *Poitra v. Sch. Dist. No. 1 in the Cty. of Denver*, 311 F.R.D. 659, 664 (D. Colo. 2015). Courts in this District and elsewhere have interpreted "otherwise been made known" to require meaningful disclosure. *See Poitra*, 311 F.R.D. at 666-67. "To satisfy the 'made known' requirement, a party's collateral disclosure of the information that would normally be contained in a supplemental discovery response must in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1168-69 (D. Colo. 2015) (citing *Jama v. City and County of Denver*, 304 F.R.D. 289, 298-99 (D. Colo. 2014)).

## ANALYSIS

FOX Factory contends that it alerted Defendants of its intent to include their BRAIN product and moved to amend its Final Infringement Contentions, originally filed on January 3, 2018 [#121-4], "based on [Defendants'] failure to timely disclose the BRAIN product in discovery." [#187 at 3]. Plaintiff contends that Defendants had failed to identify this custom rear air shock made for Specialized Bicycles Inc. ("Specialized") in their interrogatory responses; and during a deposition held on October 18, 2018, SRAM's corporate witness identified products not previously disclosed by Defendants, including the BRAIN product. [*Id.* at 3, 10]. FOX Factory

contends that SRAM first produced sales data for the BRAIN product on October 25, 2018, and such information had not previously been disclosed in the spreadsheets repeatedly relied upon by Defendants to satisfy their discovery obligations in this case. [*Id.* at 10]. FOX Factory then provided SRAM with detailed infringement analysis for the BRAIN product in its infringement expert's report on November 29, 2018. [*Id.* at 4].

Defendants argue that FOX Factory's attempt to amend its Final Infringement Contentions are untimely and not supported by good cause. [#200]. Specifically, Defendants argue that FOX Factory knew, or should have known, of the technical specifications for the BRAIN product for Specialized because it was the predecessor vendor for the shock before SRAM's subsidiary, RockShox, took its place, and that Plaintiff's own internal materials indicate that as of September 2017, FOX Factory understood that RockShox was manufacturing a new version of the BRAIN product. [*Id.* at 7]. Defendants further contend that information about the BRAIN shock, and Defendants' role in its manufacture, was publicly known and available to FOX Factory by the summer of 2017. [*Id.* at 5-6]. Defendants also argue that FOX Factory did not disclose its own BRAIN product as a commercial embodiment of the invention. Finally, while Defendants concede that they did not supplement their written discovery responses to identify the BRAIN product, they insist that they produced documents related to the BRAIN shock as early as October 2017 (including two that were incorporated into the expert's report), and therefore they had no duty to supplement Interrogatory No. 9 formally under Rule 26(e) because the information was "otherwise [] made known to the [Plaintiff] during the discovery process." [*Id.* at 7-9].

In Reply, FOX Factory does not address the availability of the information about the BRAIN shock to it, either publicly or through discovery. [#207]. Rather, it focuses upon Defendants' discovery failures, arguing that SRAM never properly responded to Interrogatory No.

7

9, and misrepresented the availability of the information about the custom product to both FOX Factory and the court. [*Id.* at 2]. The court now turns to the issues below.

I.  **FOX Factory's Diligence**

The court first looks at FOX Factory's diligence. Strikingly, Plaintiff's arguments sidestep its own knowledge—and when it gained such knowledge—about the existence and functionality of Defendants' customized BRAIN shock for Specialized. [#187; #207]. Instead, FOX Factory seeks to direct the court's attention to Defendants' discovery shortcomings. But in considering good cause, this court first focuses on whether the original deadline could have been met with reasonable diligence by Plaintiffs, not any bad faith by Defendants. *Colorado Visionary Academy*, 194 F.R.D. at 687. Using this framework, based on the record before it, this court is not persuaded that FOX Factory exercised adequate diligence to warrant amendment of its Final Infringement Contentions at this late juncture.

First and tellingly, FOX Factory carefully never argues it only learned of Defendants' BRAIN shock at the end of the discovery period. [#187; #207]. Indeed, the record before this court belies any suggestion that FOX Factory's knowledge of the BRAIN shock was dependent upon Defendants' disclosures late in discovery. And while FOX Factory vigorously argues that it was diligent in pursuing Defendants' identification of all its rear shock products so that it could pursue discovery and understand the full scope of infringement, Plaintiff never cogently explains why its own internal document related to competitive analysis from September 28, 2017 [#201-3] is insufficient to constitute knowledge of the BRAIN product and trigger its own independent obligation to diligently pursue discovery on the topic. And it would seem to defy common sense that FOX Factory—engaged in long-standing competition with SRAM, including other litigation—would be unaware of Defendants replacing it as the vendor for Specialized customized

BRAIN shock. FOX Factory simply cannot deny that its employees knew of the BRAIN shock. [#207 at 8]. Instead, it attempts to shift the focus back on Defendants' alleged malfeasances, but again, good cause first focuses upon FOX Factory's diligence, not SRAM's actions.

Second, FOX Factory does not dispute that it was intimately involved with the production of the BRAIN shock for Specialized before RockShox, and therefore generally knew of its design and functionality. Indeed, FOX Factory claimed its own BRAIN product, also known as the IV Micro or "Epic" air shock, practiced the asserted claims of the '434 Patent in its Final Infringement Contentions. [#207 at 3-7]. Though FOX Factory contends that it could not have known about the specific design from publicly available sources because such articles stated that SRAM was using a new design [#207 at 7], this again does not explain why FOX Factory did not affirmatively seek discovery on Defendants' BRAIN shock earlier in the pretrial process. FOX Factory admits that the documents produced in November 2017 were substantively sufficient to allow FOX Factory to identify the BRAIN product before submitting its Final Infringement Contentions. [#207 at 8]. Even the deposition questions of FOX Factory's counsel directed at SRAM's corporate designee, Kevin Wesling, suggests more than a minimal understanding of Defendant's BRAIN product and its design that had to have been developed by FOX Factory without Mr. Wesling's testimony and without formal supplementation by Defendants. *See, e.g.*, [#200-14 at 341:12-19]. And there is nothing in the record to explain why FOX Factory could not have developed this understanding earlier in the case. Coupled with the evidence that FOX Factory employees were aware of the BRAIN product, this is simply not a case where a late disclosure surprised a party with information that it could not have sought earlier in the action. *Cf. Granite Southlands Town Ctr. LLC v. Alberta Town Ctr., LLC*, No. 09-CV-00799-ZLW-KLM, 2010 WL 2635524, at *2 (D. Colo. June 8, 2010) (finding no good cause when Plaintiff "did not suddenly

9

obtain the information at issue" in the deposition, but finding that "[i]t has been in Plaintiff's possession throughout the litigant of this case").

Third, FOX Factory fails to point to any instances where it specifically identified the BRAIN shock to Defendants or the court and the Defendants denied its existence, functionality, or relevance to this action. To be certain, as discussed in detail below, Defendants have obligations to properly respond to written discovery under the Federal Rules of Civil Procedure. But Plaintiff similarly has an obligation to actively pursue discovery based on its own knowledge; it cannot simply lay in wait, with actual knowledge of a potentially infringing product, to capitalize if Defendants falter in their discovery obligations. FOX Factory has been represented by very able counsel in this action since its inception and through its transfer to this District, and such counsel have been able to effectively raise and successfully prevail on a variety of discovery issues before the court.

Plaintiff is correct that it had to seek court intervention with respect to Topic No. 1 to its Rule 30(b)(6) Notice, seeking "Identification of each SRAM or RockShox 12 mm or greater quick-release axle product/model sold anywhere by SRAM or RockShox since 2007." [#159; #159-1 at 2]. But by May 2, 2018, this court had compelled Defendants to produce a witness to testify about Topic No. 1. [#163 at 1]. The Parties then sought to stay discovery to engage in settlement discussions, which were ultimately not fruitful. [#170; #171; #173]. To the extent that Plaintiff strategically chose to wait to take the depositions of key SRAM witnesses, such strategy does not negate the fact that FOX Factory's own employees knew of SRAM's involvement with BRAIN shock and that Defendants had produced documents about the BRAIN product as early as October 2017. This court is simply not convinced that FOX Factory exercised reasonable diligence in seeking the information it lacked about the BRAIN shock or that it was thwarted by Defendants in

its exercise of reasonable diligence that would have permitted it to include the product at least in its Final Infringement Contentions. To hold otherwise, in this court's estimation, would undercut the purpose and timing of Final Infringement Contentions. Thus, this court concludes that Plaintiff has not carried its burden of establishing good cause to allow amendment of its Final Infringement Contentions at this late stage.

## II. Discovery Sanction

Though not framed as such, this court also considers whether it would be appropriate to allow FOX Factory to amend its Final Infringement Contentions to include the BRAIN shock as a discovery sanction. Rule 26(g) of the Federal Rules of Civil Procedure imposes a self-executing, affirmative certification, that to the best of the signing counsel or party's knowledge, information, and belief formed after a reasonable inquiry, a discovery disclosure is complete and correct as of the time it is made. Fed. R. Civ. P. 26(g). Rule 26(e) then requires a party to supplement its discovery responses in a timely manner upon learning that the response is incomplete or incorrect, unless the additional or corrective information has been otherwise made known during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1). Against this framework, the court considers whether Defendants failed to satisfy their discovery obligations under the Federal Rules of Civil Procedure, and if so, what the appropriate sanction for such failure should be.

Here, it is undisputed that Defendants failed to identify the BRAIN shock in response to Interrogatory No. 9, either originally or by supplementation. Nor did Defendants call specific attention to documents identifying the BRAIN shock pursuant to Rule 33(d) or otherwise. And, as FOX Factory points out and this court recalls, Defendants repeatedly assured Plaintiff and this court that all relevant sales and products were identified in a sales spreadsheet—representations that have been borne out to be inaccurate. This court is, without a doubt, troubled by these

circumstances, particularly, Defendants repeated insistence to FOX Factory and the court that all relevant products had been identified and sales information produced in spreadsheets to rebut Plaintiff's complaints about the sufficiency of Defendants' responses to written discovery.

Nevertheless, though careless, there is no evidence in the record before it that Defendants' conduct was intentionally evasive with respect to the BRAIN shock. As discussed, it is undisputed that Defendants produced documents related to the BRAIN shock by October and November 2017, including two relied upon by FOX Factory's expert to support his conclusion that the product infringes the '434 Patent. *Compare* [#200 at 7; #200-2; #200-13] *with* [#207]. Defendants then produced more documents related to the BRAIN shock in May 2018, including technical drawings. [#200 at 8-9]. Timothy Lynch then testified as to the BRAIN product on September 13, 2018 [#200-1 at 96:20-99:1], and then Mr. Wesling testified about the product, in response to very specific questions by FOX Factory's counsel, on October 18, 2018. [#200-18]. Only after Mr. Wesling's deposition did FOX Factory request documents specific to the custom BRAIN product. [#187-1 at ¶ 8].

Any sanction for a discovery violation "must be exercised with restraint and discretion, to assure that the sanction is proportionate to the offending conduct." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 636 (D. Colo. 2007) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). Taking the totality of these circumstances together, this court cannot conclude that Defendants knew all along, or learned prior to FOX Factory's request for additional information regarding the BRAIN product after Mr. Wesling's deposition, that their prior discovery responses were incomplete, triggering an obligation to supplement under Rule 26(e). Accordingly, this court concludes that permitting FOX Factory to amend its Final Infringement

Contentions to include the BRAIN product now is not a proportional sanction for any discovery violations by Defendants.[2]

## CONCLUSION

For the reasons set forth above, it is respectfully **RECOMMENDED** that:

(1)  Plaintiff FOX Factory, Inc.'s Motion to Amend Final Infringement Contentions [#187] be **DENIED**.[3]

DATED:  April 2, 2019                                            BY THE COURT:

                                                                 _____
                                                                 Nina Y. Wang
                                                                 United States Magistrate Judge

---

[2] In so ruling, this court notes that Plaintiff does not argue, and this court does not independently find, any basis to conclude that FOX Factory could not initiate a separate action accusing the BRAIN shock of infringement of the '434 Patent and could agree to expedited proceedings with little to no discovery. Though the application of the statute of limitations for patent infringement actions might affect the available period of damages, this court does not find that reason to be sufficiently compelling to allow amendment of the Final Infringement Contentions in this action.

[3] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).